UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jeff Tarbell, | No. 2:20-cv-01679-KJM-CKD |
| Plaintiff, | ORDER |
| v. | |
| Caliber Home Loans, Inc., and Heidrick & Struggles, Inc. | |
| Defendants. | |

Jeff Tarbell alleges Caliber Home Loans and a recruiter from Heidrick & Struggles made grand promises about a job but never intended to deliver. Tarbell sued for fraud, misrepresentation, breach of contract, and negligence. Caliber now moves to compel arbitration, and Heidrick moves to dismiss. As explained in this order, the motion to compel arbitration is granted, the case is stayed in its entirety, and the motion to dismiss is denied without prejudice to renewal after the stay is lifted.

**I.     BACKGROUND**

In 2019, Tarbell was a regional vice president at a mortgage company, where he made nearly $1 million a year. Compl. ¶ 7, ECF No. 1. He took a call from a recruiter at Heidrick, who was looking for someone to fill a position at Caliber. *See id.* ¶¶ 7–8. Tarbell said he was

1

1    interested. *See id.* ¶ 1.  Two weeks later, a Caliber executive visited Tarbell and his wife at their
2    home.  *Id.* ¶ 8.  The executive said Caliber was looking for someone to take over its sales in
3    California, Arizona, and New Mexico.  *See id.*  The meeting went well, and Tarbell decided to fly
4    to Dallas, where he met more of Caliber's management participated in an interview.  *See id.* ¶¶ 8–
5    9.  He told them he would only consider the job if Caliber could guarantee he would stay through
6    the end of 2020 and earn a year-end bonus.  *See id.* ¶ 9.

7         Caliber decided it wanted to hire Tarbell as a Division Vice President and sent him an
8    offer letter via Heidrick.  *See id.* ¶ 10.  The offer letter did not guarantee pay through 2020 or an
9    end-of-year bonus, however, so Tarbell asked Heidrick to follow up.  *See id.*  Caliber responded
10   that it would guarantee $1 million in pay as a minimum and employment through the end of 2020.
11   *See id.*  Tarbell accepted the revised offer.  *See id.*

12        Tarbell also signed an arbitration agreement.  *See* Tarbell Decl. ¶¶ 6–7 & Ex. A, ECF No.
13   19.  The arbitration agreement "applies to any dispute arising out of or related to [Tarbell's]
14   employment with [Caliber]."  *See id.* Ex. A at 2.  He agreed "that any legal dispute or controversy
15   covered by [the arbitration agreement] or arising out of, relating to, or concerning the validity,
16   enforceability or breach of [the arbitration agreement], shall be resolved by final and binding
17   arbitration in accordance with JAMS Employment Arbitration Rules & Procedures . . . ."  *Id.*  He
18   could have opted out of this agreement, but did not do so.  *See id.* ¶ 7 & Ex. A at 4.

19        Almost immediately after Tarbell started at Caliber, something seemed wrong.  Caliber
20   never announced that he had joined the company.  *See* Compl. ¶ 11.  He was not introduced to
21   anyone.  *See id.*  No one included him on management memos, calls, meetings, or emails.  *See id.*
22   The company told him it did not have a "definitive plan" but asked for his patience.  *Id.* ¶¶ 11–12.
23   For the next few months, Tarbell did the job he thought he had been hired to do.  *See id.* ¶ 12.
24   But in March 2020, the same executive who had recruited him told him that Caliber had decided
25   to let him go rather than make him a Division Vice President.  *See id.* ¶ 13.  It would not pay him
26   as promised.  *See id.* ¶ 13.  The company offered Tarbell a different job and less money, but he
27   refused.  *See id.* ¶ 14.  He left the company.  *Id.*
28   /////

Tarbell sued both Heidrick and Caliber in August. *See generally id.* He alleges Caliber and Heidrick breached contractual promises and either lied about or misrepresented the job in an effort to convince him to leave his old company. He asserts five claims under California law: fraud (against both defendants), negligent misrepresentation (against both defendants), promissory fraud (against Caliber only), breach of contract (against Caliber only), and negligence (against Heidrick only). Caliber moved to compel arbitration and stay this case until the arbitration is complete. Mot. Arb., ECF No. 14. Heidrick moved to dismiss. Mot. Dismiss, ECF No. 10. Those motions are now fully briefed and the court submitted them without argument. *See* Opp'n Arb., ECF No. 18; Opp'n Dismiss, ECF No. 13; Reply Arb., ECF No. 21; Reply Dismiss, ECF No. 17; Minute Order, ECF No. 24.

## II. DISCUSSION

Congress passed the Federal Arbitration Act "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 2 of that act, its "primary substantive provision," *id.* (citation omitted), provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The Arbitration Act also allows district courts to hear motions to compel arbitration. 9 U.S.C. § 4. A court must normally answer two questions in response to a motion to compel arbitration: (1) whether the parties agreed to arbitrate; and (2) whether their agreement covers the dispute the plaintiff brought before the court. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The party moving to compel arbitration bears the burden to prove these elements by a preponderance of evidence. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). If the party moving to compel carries that burden, arbitration is mandatory, not discretionary. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Here, first, Tarbell concedes he signed an arbitration agreement with Caliber. *See* Tarbell Decl. ¶¶ 6–7. Second, the arbitration agreement "applies to any dispute arising out of or related

to [Tarbell's] employment with [Caliber.]" *See id.* Ex. A at 2. Each of Tarbell's claims against Caliber falls within the scope of that clause: He alleges in his first three claims against Caliber that the company falsely promised him (whether intentionally or negligently) the title of Division Vice President and at least $1 million a year in an effort to persuade him to leave his old job. *See* Compl. ¶¶ 15–23 (fraud claim); *id.* ¶¶ 24–31 (misrepresentation claim); *id.* ¶¶ 32–41 (promissory fraud claim). In his final claim against Caliber, he alleges the company's promises were part of an employment contract. *See id.* ¶¶ 42–46. These claims are unmistakably "related to" and "aris[e] out of" Tarbell's employment with Caliber. The arbitration agreement indeed refers expressly to claims arising in "torts" and "contracts" and disagreements about "termination" and "compensation" when it explains what disputes must be arbitrated. *See* Tarbell Decl. Ex. A at 2. Tarbell does not argue otherwise. Caliber has carried its burden, so its motion to compel arbitration must be granted.

Tarbell cannot avoid this conclusion by arguing Caliber defrauded him. *See* Opp'n at 5–8. He is correct that agreements to arbitrate can be "invalidated by 'generally applicable contract defenses, such as fraud.'" *AT&T Mobility*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Such disputes are "presumptively reserved for the court." *See Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). But an arbitration agreement can also delegate threshold questions of arbitrability to the arbitrator, and that delegation will be enforced if "clear and unmistakable." *Id.* (citation and quotation marks omitted). For example, an agreement could give an arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the validity of the arbitration agreement." *Brennan*, 796 F.3d at 1130 (alterations omitted); *see also Momot*, 652 F.3d at 988 (enforcing agreement to arbitrate disputes about "validity or application of" arbitration agreement). Here, Tarbell's agreement with Caliber does just that: it gives the arbitrator power to resolve any disputes "arising out of, related to, or concerning the validity, enforceability or breach" of the arbitration agreement. Tarbell Decl. Ex. A at 2. It clearly and unmistakably delegates disputes about the validity and enforcement of the arbitration agreement to the arbitrator.

/////

1      Nor can Tarbell shield his fraud claims from arbitration by arguing the delegation clause
2   was itself procured by fraud. *See* Opp'n Arb. at 7–8. Although it is true that a court, not an
3   arbitrator, would decide whether a delegation provision was itself the product of a fraud, a
4   defense of that type can succeed only if it is "directed specifically to the agreement to arbitrate."
5   *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). It is not enough to assert broad claims
6   that apply equally to the whole relationship or contract in question. *See id.* at 71–72. Tarbell's
7   claims of fraud and misrepresentation are too broad. They apply equally to his entire relationship
8   with Caliber. *See, e.g.*, Compl. ¶ 20 ("[A]s a proximate result of the fraudulent conduct of . . .
9   Caliber Home Loans . . . , Mr. Tarbell has not received the benefits from the bargained for
10  Employment Agreement."); *see also id.* ¶¶ 29, 38 (alleging similarly). The same is true of the
11  statements in Tarbell's declaration. He identifies the same set of "true facts" as the basis for all of
12  his claims. *See* Tarbell Decl. ¶ 13. The court thus grants Caliber's motion to compel arbitration
13  and to stay the claims against it.

14     Caliber is, of course, not the only defendant in this litigation, so a stay of the claims
15  against it does not necessarily effect a stay of the case in its entirety. But when some parties in a
16  case have agreed to arbitrate and others have not, a district court may stay the whole action "as a
17  matter of its discretion and to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury*
18  *Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55
19  (1936)). Staying the case in its entirety might be appropriate if arbitration of the claims against
20  one party is likely to resolve factual disputes "coextensive with claims against nonparties to that
21  arbitration agreement." *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1045 (N.D. Cal.
22  2018) (quoting *Jaffe v. Zamora*, 57 F. Supp. 3d 1244, 1248 (C.D. Cal. 2014)). In that situation, a
23  stay would avoid inconsistent factual findings and the duplication of efforts. *See id.*

24     Such is the situation here. Tarbell's claims against Heidrick & Struggles are based on the
25  same allegations as his claims against Caliber. He alleges he was speaking with both defendants
26  about the same topics at the same time. *See* Compl. ¶ 10. According to his complaint, they told
27  him the same lies, *see id.* ¶¶ 16, 25, and he suffered the same harms as a result, *see, e.g.*, *id.* ¶¶ 21,
28  30. His allegations overlap so much that it is often unclear which defendant told him what. *See,*

5

*e.g.*, *id.* ¶ 10 (alleging passively what Tarbell "was told" during the negotiations over his move to Caliber). The overlap is not perfect. Tarbell asserts a negligence claim against Heidrick & Struggles only. *See id.* at 10. But that claim, like the others, rests on allegations about what Caliber said and did. According to the complaint, Heidrick wrongly failed "to determine if Caliber Home Loans even had an open position for a Division Vice-President, . . . [and] if the representations made by [Caliber] regarding the terms and conditions of employment were in fact true." *See id.* ¶ 50. Even the negligence claim against Heidrick could not be litigated without discovery about what Caliber said and did. For these reasons, litigating the claims against Heidrick in this court and arbitrating the claims against Caliber would be wasteful and risk inconsistent resolutions. This court and other California district courts have extended stays to the entire action in similar situations. *See, e.g.*, *SteppeChange*, 354 F. Supp. 3d at 1045; *Trinchitella v. Am. Realty Partners, LLC*, No. 15-2365, 2016 WL 4041319, at *13 (E.D. Cal. July 27, 2016); *Jaffe*, 57 F. Supp. 3d at 1248. The court thus stays the case in its entirety.

### III.  CONCLUSION

The motion to compel arbitration is **granted**. This action is **stayed in its entirety**. All dates and deadlines are **vacated**.

Tarbell and Caliber are directed to file a **joint status report every 120 days** summarizing the status of the arbitration. Caliber is also directed to file a **notice within seven days** of the date (1) arbitration is completed or (2) any other resolution of the claims against Caliber, whichever date is first.

The motion to dismiss at ECF No. 10 is **denied without prejudice to renewal**.

This order resolves ECF Nos. 10 and 14.

IT IS SO ORDERED.

DATED: March 15, 2021.

CHIEF UNITED STATES DISTRICT JUDGE